27317. HARRIS *v.* SOUTHEASTERN PRINTERS SUPPLY CO.

DECIDED MARCH 17, 1939.

*H. B. Moss, Gordon B. Gann,* for plaintiff in error.

*Mozley & Combs,* contra.

STEPHENS, P. J. ■ The statute (Code, § 6-1004), provides that an affidavit in forma pauperis made by the plaintiff in error as a relief against the payment of costs in this court should state that the plaintiff in error "because of poverty, is unable to pay the costs." An affidavit which states that the plaintiff in error "is unable from his poverty, at the present time, to pay the costs," is to the same effect as the affidavit required by law. The affidavit required by law that the plaintiff in error "is" unable to pay the costs, is an affidavit that the plaintiff in error is *now,* at the *present time,* unable to pay the costs. The addition in the affidavit that the plaintiff in error is "at the present time" unable to pay the costs neither adds to nor takes anything from the requirements of the statute. An affidavit given that the plaintiff in error is unable "at the present time" to pay the costs, is the affidavit required by statute. Code, § 6-1004. The motion to dismiss the writ of error on the ground that the affidavit given is not that required by law is overruled.

■ It is only when an agent is either expressly or impliedly dealing or acting for and in behalf of his principal that a contract made by the agent with a third person having knowledge of this relationship is the contract of the principal, and is not the personal contract of the agent. 3 C. J. S. 119. Where a person makes a contract with the known agent of another, it does not, under the provisions of the Code, § 4-406, necessarily follow as a matter of law, in the absence of an express contract with the agent in his individual capacity, that the contract is with the principal. The contract may, depending upon the facts and circumstances, be impliedly one with the agent in his individual capacity, and not a contract with his principal. "To whom was the credit knowingly given, according to the understanding of both parties?" *Fleming v. Hill,* 62 *Ga.* 751, quoting from Story on Agency. "This question is one of fact to be decided by the jury under the circumstances of each case." *Fleming* v. *Hill,* supra. See 2 C. J. 813, § 487, 943, § 661; *Dorsey* v. *Rankin,* 43 *Ga. App.* 12 (157 S. E. 876); *Phinizy* v. *Bush,* 129 *Ga.* 479 (10) (59 S. E. 259).

■ Where the plaintiff, Southeastern Printers Supply Company, a partnership, through W. G. Morgan, a member of the firm, made an oral agreement with the defendant, W. L. Harris, to install and repair a printing press on what was designated as "a time and material basis," and Harris did not at any time during the negotiations for the contract or during the progress of the work disclose to Morgan, the agent of Southeastern Printers Supply Company, that Harris was the agent of any one or that he was contracting for the services, or that he accepted the services, as the agent for another, and, notwithstanding the fact that Morgan may have known beforehand that Harris was "connected with" or was an officer in or agent for a corporation entitled Marietta Publishing Company, and that Marietta Publishing Company was the owner of the printing press which was being repaired under the contract, and notwithstanding the plaintiff may in the past have dealt with Marietta Publishing Company and sold other machinery to it and installed it, but where after the completion of the work the plaintiff made out bills and statements of the work to the "Marietta Journal," which was not a corporation, but was the name of a newspaper published by Marietta Publishing Company of which the defendant Harris was president, and these bills and statements were received by Harris, and where Harris afterwards discussed the matter with the plaintiff and made no complaint that the bills and statements were not made out to Marietta Publishing Company, it does not appear conclusively and as a matter of law that the plaintiff, in furnishing the labor and material and doing the work on the printing press, contracted with and did the work for Marietta Publishing Company, Harris's principal, but the inference is authorized that the contract was with Harris in his individual capacity.

In Anderson v. Timberlake, 114 Ala. 377 (62 Am. St. R. 105), it is stated by Chief Justice Brickell as follows: "The legal presumption is, when a known agent deals or contracts within the scope of his authority, that credit is extended to the principal and not to the agent, and that the dealing is the act, or the contract is the engagement, of the principal alone, as if he were personally present and acting or contracting. This presumption prevails in the absence of evidence that credit was given to the agent exclusively, and the burden of proof rests upon the party seeking to

charge him personally. If the contract or promise is in writing, its construction and effect are, ordinarily, questions of law for the decision of the court. But when the contract or promise is verbal, the question whether the credit was given to the agent in exclusion of the credit of the principal is a question of fact for the determination of the jury, to be ascertained from a consideration of all the circumstances attending the transaction." 2 C. J. 813, § 487, 923, § 661; 3 C. J. 119; *Dorsey* v. *Rankin*, 43 *Ga. App.* 12 (167 S. E. 876); *Phinizy* v. *Bush*, supra.

The Code, § 4-406, provides: "Where the agency is known, and the credit is not expressly given to the agent, he shall not be personally responsible upon the contract. The question to whom the credit is given is a question of fact to be decided by the jury under the circumstances in each case." Before an alleged agent can be relieved of personal responsibility on a contract made with him on the ground that the party dealing with him had knowledge of the agency, there must be a principal, otherwise there can be no disclosed principal and no agency, and no knowledge of the agency by the person dealing with the alleged agent.

There being no evidence which would demand a finding as a matter of law that when the plaintiff had the dealings referred to with the defendant, Harris, Marietta Publishing Company was a corporation, and that therefore there was a principal of which the defendant Harris was an agent, it does not appear conclusively and as a matter of law that there was a disclosed principal and there therefore there was a contract, not with Harris individually, but with his principal. The only evidence whatsoever tending to establish that Marietta Publishing Company was a corporation was the testimony of Harris himself, who is a party to the case, and whose testimony must be construed most strongly against him, that Marietta Publishing Company was incorporated in 1909, and that Marietta Publishing Company was a corporation prior to 1937. It does not follow that because Marietta Publishing Company was a corporation "prior to 1937" it was a corporation in 1933 or 1934 when the alleged contract was made. Marietta Publishing Company could have been a corporation prior to 1937 and could have lost its corporate character prior to the time of the execution of the contract. There is no presumption that a corporation which was incorporated in 1909 continued as such until the

time of the execution of the contract which was after the expiration of 20 years from the date of the corporation's creation.

■ Where the court charged that when the agency is known to the plaintiff, and credit is not expressly given to the agent, the latter is not personally responsible under the contract, but that "the question as to whom the credit is extended is a question of fact to be decided by the jury under the circumstances in each case" and this was a complete and correct proposition of law, it was not error for the court to fail to add to said charge "that the giving of credit, in order to be binding on defendant, must appear to have been given under the agreement of the parties, and that plaintiff's so given credit, unless done by the consent or agreement of the defendant, would not bind the defendant." It further was not error for the court to fail to so charge, when the court immediately after the charge given, gave in charge to the jury matter substantially the same as that which it is alleged should have been given, namely, that "the question which you will first determine, is to whom was the credit knowingly given according to the understanding of both parties, that is, the plaintiff and the defendant."

■ The court having charged the jury that if they should find that the defendant in making the contract was representing his principal and acted for his principal, and this was known to the plaintiff, and that the defendant dealt with the plaintiff as agent of his principal, and that the services and materials alleged to have been furnished by the plaintiff were furnished to the defendant's principal, by and through the defendant as the principal's agent, that the plaintiff would be entitled to recover against the defendant unless the jury should find that there was an express agreement or understanding between the plaintiff and the defendant that the defendant would be personally liable, it was not error for the court to fail to give in charge the following matter which was to the same effect as the charge given: "Every corporation acts through its officers, and is responsible for acts of such officers in the sphere of their appropriate duties, and in order to bind the agent it must appear from the evidence that exclusive credit was given to the agent to constitute an election by the seller between principal and agent."

■ The charge of the court to the jury that "if there was no specific contract, as contended by the defendant, then if anything

is due the plaintiff the plaintiff would be entitled to recover such sum as you might find to be the reasonable value of the labor and material furnished and repairs done, if any," was not subject to the objection that it was an instruction to the jury that the defendant would be liable in the absence of an express contract by him in which he assumed liability in his individual capacity. The charge was not to the effect that if there was no express contract entered into by the defendant in his individual capacity the plaintiff could nevertheless recover against the defendant. The court had charged the jury that should they find there was an agreement by which the defendant became personally liable to the plaintiff, the plaintiff would be entitled to recover if the jury should find anything owing on the account sued on, and that if the jury should find that "there was a specific contract as to the amount to be paid for the labor and materials between the plaintiff and the defendant, as contended for by the plaintiff, then the plaintiff, if entitled to recover anything, would be entitled to recover whatever amount was due under that specific contract at the rates therein provided," but, immediately continuing in the language above excepted to, that "if there was no specific contract, as contended by the defendant, then if anything is due the plaintiff the plaintiff would be entitled to recover such sum as you might find to be the reasonable value of the labor and materials furnished and repairs done, if any." This charge is to the effect that if the contract was done and materials were furnished by the plaintiff under a contract by which the defendant was liable in his individual capacity, and there was no agreement by which the plaintiff was to be paid any specific or agreed amount for the labor and work to be done, and that if the plaintiff was entitled to recover anything under the contract, he could recover on quantum meruit for the reasonable value of the work and materials furnished. This must have been so understood by the jury. The charge therefore was not error.

■ The evidence authorized the finding that the amount sued for was just, true, due, and unpaid under the terms of the contract, and that the defendant was liable in his individual capacity. The evidence authorized the verdict for the plaintiff, and no error appears.

*Judgment affirmed.* *Sutton, J., concurs.* *Fellon, J., dissents.*

FELTON, J., dissenting. Where an agency is known, the question as to whether credit was extended to the agent or to the principal is a question for the jury only when there are questions of fact authorizing them to find one way or the other. When the evidence demands a finding that the credit was extended to the principal there is no jury question. I think the evidence in this case demands the finding that credit was extended to the corporation, Marietta Publishing Company. There is not one scintilla of evidence authorizing any other conclusion. The suit was for a balance due for labor and parts in the installation of a printing press. Marietta Publishing Company was interested in buying a printing press. The plaintiff, a partnership composed of two partners, put it in touch with a concern out West from whom it bought the press on credit. The corporation gave its notes and a bill of sale to secure debt or mortgage therefor, but before the seller would sell it required that the plaintiff indorse the notes of Marietta Publishing Company. As a part of the transaction the plaintiff was to receive two of the notes, some of the proceeds of which it retained and some of which it remitted to the seller of the press. The notes were signed "Marietta Publishing Company, by Wm. L. Harris, president. Attest: Macy M. Gaines, secretary." The evidence was that the Marietta Journal was the name of the newspaper published by the corporation. There is no evidence that it was operated by Harris individually. One of the partners, Mr. W. G. Morgan, testified that the only dealings he had ever had with Harris was as president of the Marietta Journal. He stated that Harris was connected with Marietta Publishing Company, and he stated that he dealt with Harris as president, "or something," of the Marietta Journal. He stated that he did not know the correct name. Morgan's partner indorsed the notes given for the machinery and Morgan swore that he never saw them. The partnership was charged with knowledge that it was dealing with Harris as agent, as president of the corporation. Not a word was said about binding Harris individually, and, after dealing with him as agent in the purchase of the machinery, they could not, in the absence of any contract or circumstances evidencing another intention, secretly intend to deal with him as an individual in a contract to install the very machinery which the plaintiffs had helped the corporation to buy and out of which they

made a profit. The plaintiff wrote to "The Marietta Journal" on September 1, 1932, as follows: "We are holding a trade report on *your company* and would like to have your check for this item in order to make a good report, otherwise we will have to report the exact condition." (Italics mine.) This letter shows the plaintiff knew it was dealing with a corporation, whether it got the name right or not. Bills for some articles previously bought were made out to Marietta Journal, and one to Marietta Journal Publishing Company, and one to Marietta Publishing Company. The particular ways in which letters were addressed to Harris are of no probative value. When the plaintiff wrote him about paying the bill sued on it addressed him, "W. L. Harris, Marietta Journal Publishing Company." When it wrote him about the corporation's notes it had indorsed it addressed the letter the same way. Mr. Morgan's testimony shows that he knew he was not dealing with Harris individually, whether he knew the name of the corporation for which he was acting or not. He is presumed to know that men operating under a trade-name do not sign themselves as president. The effect of the majority opinion is to permit the plaintiff, by its secret intentions, to make a contract with W. L. Harris which he never intended or thought of.

From all that the evidence discloses, the charter of the corporation had expired. It doesn't make any difference whether there is a presumption that it was renewed or not. When one party deals with another as a corporation he is estopped to deny the fact of incorporation, and this is true whether the corporation was ever legally chartered or whether its charter had expired. Code § 22-714; *Planters & Miners Bank* v. *Padgett*, 69 *Ga.* 159; *Imboden* v. *Etowah & Battle Branch Mining Co.*, 70 *Ga.* 86; *Petty* v. *Brunswick & Western Railway Co.*, 109 *Ga.* 666 (35 S. E. 82); *Brown* v. *Atlanta Railway & Power Co.*, 113 *Ga.* 462 (39 S. E. 71); *West* v. *Flynn Realty Co.*, 53 *Ga. App.* 594 (186 S. E. 753). I think the evidence demanded a finding that the plaintiff knew it was dealing with a corporation through an agent, the only way it could deal with it, and that the credit was not expressly or by implication extended to Harris as an individual because of anything that he or the plaintiff said or did.